James J. Moak (Bar No. 82393)
jmoak@mmhllp.com
Charles K. Chineduh (Bar No. 273258)
cchineduh@mmhllp.com
MESERVE, MUMPER & HUGHES LLP
800 Wilshire Boulevard, Suite 500
Los Angeles, California 90017-2611
Telephone: (213) 620-0300
Facsimile: (213) 625-1930

Attorneys for Plaintiff
STANDARD INSURANCE COMPANY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANDARD INSURANCE COMPANY, | Case No. **'14CV1952 W    BLM** |
| Plaintiff, | **COMPLAINT IN INTERPLEADER** |
| vs. | |
| TRINH THI TUYET O'BRIEN, ALLISON A. O'BRIEN, and MADELINE R. O'BRIEN, | |
| Defendants. | |

Plaintiff, STANDARD INSURANCE COMPANY ("Standard"), by way of Complaint in Interpleader, alleges as follows:

## THE PARTIES

1.   Standard is a corporation organized and existing under the laws of the State of Oregon, with its principal place of business in the State of Oregon. Standard is authorized to transact, and is transacting, the business of insurance in the State of California.

2.   Standard is informed and believes, and on that basis alleges that Defendant TRINH THI TUYET O'BRIEN ("Trinh O'Brien") is a citizen and resident of the State of California, County of San Diego, is over the age of 21, and was married,

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

138268.1

1

Case No.
COMPLAINT IN INTERPLEADER

as of the date his death, to TIMOTHY PATRICK O'BRIEN, deceased (the "Insured"), whose life insurance proceeds are at issue in this action.

3. Standard is informed and believes, and on that basis alleges that Defendant ALLISON A. O'BRIEN ("Allison O'Brien") is a citizen and resident of the State of California, County of San Diego, and is an adult daughter of the Insured, whose life insurance proceeds are at issue in this action.

4. Standard is informed and believes, and on that basis alleges that Defendant MADELINE R. O'BRIEN ("Madeline O'Brien") is a citizen and resident of the State of California, County of San Diego, and is an adult daughter of the Insured, whose life insurance proceeds are at issue in this action.

5. Standard is informed and believes, and on that basis alleges that at all relevant times Insured was an employee of Weldmac Manufacturing Company ("Weldmac").

## JURISDICTION AND VENUE

6. This is an interpleader action of a civil nature brought pursuant to Rule 22 of the Federal Rules of Civil Procedure. This Court has original jurisdiction over this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and in particular under 29 U.S.C. §§ 1132(a), (e), (f) and (g), and 28 U.S.C. § 1331, because this action involves a claim for life insurance benefits under an employee welfare benefit plan governed by ERISA.

7. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this suit is between diverse parties, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

8. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), because it is the judicial district in which the defendants reside or may be found.

///
///

## FACTS

9. At all relevant times, as a result of his employment, the Insured was eligible for life insurance coverage under a group insurance policy issued by Standard to Weldmac, bearing group policy number 602315 (the "Group Policy"). Attached hereto as **Exhibit A** is a true and correct copy of the applicable policy, along with applicable endorsements and amendments. Attached hereto as **Exhibit B** is a true and correct copy of the Group Insurance Certificate and Summary Plan Description under the Group Policy.

10. In order to begin processing a claim for life insurance benefits under the Group Policy, Standard must first receive certain information from the Plan Administrator, in this case Weldmac, including notice that an event has taken place potentially triggering coverage under the Group Policy, information regarding the employee-participant, and the identity of any beneficiary or beneficiaries that the insured has designated.

11. Standard is informed and believes, and on that basis alleges that on or about April 19, 2012, the Insured executed an Enrollment and Change Form designating Allison O'Brien and Madeline O'Brien (Insured's daughters) as co-equal (50/50) beneficiaries to his life insurance benefits under the Group Policy. Attached hereto as **Exhibit C** is a true and correct redacted copy of the Enrollment and Change Form.

12. On or about May 25, 2013, Insured was found dead, at which time he was covered for $88,000.00 in life insurance under the Group Policy (the "Death Benefit Proceeds").

13. A dispute has arisen as to whom (and what amount) the Death Benefit Proceeds under the Group Policy should be paid.

14. On or about August 1, 2013, Weldmac submitted a copy of the Insured's aforementioned Enrollment and Change Form, as well as the employer's portion of a

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

138268.1

3

Case No.
COMPLAINT IN INTERPLEADER

Proof of Death Claim Form. Attached hereto as **Exhibit D** is a true and correct redacted copy of the Proof of Death Claim Form.

15. The August 1, 2013 letter from Weldmac to Standard also noted that Insured "was married at the time of his death to Trinh Thi Tuyet O'Brien." Attached hereto as **Exhibit E** is a true and correct copy of Weldmac's August 1, 2013 letter.

16. By letter dated August 21, 2013, Trinh O'Brien informed Standard that she was "Tim's wife" and was filing a "claim to be beneficiary of his life insurance." Attached hereto as **Exhibit F** is a true and correct copy of Trinh O'Brien's August 21, 2013 letter.

17. Along with her letter, Trinh O'Brien included copies of her and the Insured's License and Certificate of Marriage, as well as Insured's Death Certificate. Attached hereto as **Exhibit G** is a true and correct redacted copy of the License and Certificate of Marriage. Attached hereto as **Exhibit H** is a true and correct redacted copy of the Insured's Death Certificate.

18. Thereafter, Defendants Allison O'Brien and Madeline O'Brien both submitted Beneficiary Statements, along with a another copy of the Insured's Death Certificate.

19. In a joint letter dated October 3, 2013, both Allison O'Brien and Madeline O'Brien informed Standard that they were "each entitled to 50% of the life insurance benefit" because Insured designated them "as his beneficiaries in April 2012 when he began his employment with Weldmac," the Insured married Trinh O'Brien in February 2013 but "did not deliver a Beneficiary Designation for Trinh [O'Brien] to the Policyowner [Weldmac] prior to his death on May 25, 2013," and the Insured did not pay insurance premiums for the policy from any community funds during his marriage with Trinh O'Brien, but rather, the premiums were paid by Weldmac. Attached hereto as **Exhibit I** is a true and correct copy of Allison and Madeline O'Brien's October 3, 2013 letter to Standard.

///

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

138268.1

4

Case No.
COMPLAINT IN INTERPLEADER

20. Trinh O'Brien also notified Standard that she was asserting a community property claim to the Death Benefit Proceeds and that she was entitled to 50% of the benefits.

21. On or about December 6, 2013, Trinh O'Brien, through counsel, wrote to Standard asserting that Insured's premiums were paid with community property funds, and that Trinh O'Brien was entitled to "fifty-percent of the benefits." Trinh O'Brien's counsel also invited Standard to file an Interpleader action to resolve the dispute as to who was properly entitled to the Death Benefit Proceeds.

22. Subsequently, as entitlement to 50% of the Death Benefit Proceeds was undisputed, Standard released those funds and sent two checks (in equal amounts) to both Allison and Madeline O'Brien representing 50% of the Death Benefit Proceeds plus applicable claim interest. Attached hereto as **Exhibit J** are true and correct copies of the checks issued by Standard to both Allison and Madeline O'Brien.

23. However, in or about January 2014, Allison and Madeline O'Brien informed Standard that they would not be cashing the checks issued to them by Standard.

24. Between January 2014 through May 2014, Standard sent multiple letters to the parties inviting them to attempt to informally resolve their dispute. Standard also advised the parties of its intent to file an interpleader action if an amicable resolution could not be reached.

25. Standard is informed and believes, and on that basis alleges that as of the filing of this action, both Allison and Madeline O'Brien have not cashed the checks Standard sent them for 50% of the Death Benefit Proceeds, plus applicable interest.

### THE APPROPRIATENESS OF INTERPLEADER

26. Standard re-alleges and incorporates by reference Paragraphs 1 through 25 above, as though fully set forth herein.

///

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

138268.1

5

Case No.
COMPLAINT IN INTERPLEADER

27. Standard is informed and believes, and on that basis alleges that a controversy exists with respect to the Death Benefit Proceeds due to the rival claims of Defendant Trinh Thi Tuyet O'Brien and Defendants Allison A. O'Brien and Madeline R. O'Brien.

28. Standard alleges that there are life insurance proceeds payable under the Group Policy in the amount of Eighty-Eight Thousand Dollars and Zero Cents ($88,000.00), plus interest accrued at the applicable rate from the date of the Insured's death through the present.

29. Standard claims no beneficial interest in the Death Benefit Proceeds due under the Group Policy, as it is a mere stakeholder with respect to the Death Benefit Proceeds. Standard has at all times been, and is now, ready, willing and able to pay the sums due under the Group Policy to the person or persons legally entitled thereto. As a result of the facts and circumstances set forth above, which relate to actual conflicting claims for the Death Benefit Proceeds under the Group Policy, Standard cannot definitively or safely determine to whom (and in what amounts) payment of these proceeds should be made. As a consequence, Standard cannot disburse the Death Benefit Proceeds at issue under the Group Policy without incurring significant risks of multiple liability and duplicative litigation.

30. On the date of the filing of this Complaint in Interpleader, Standard will cause to be deposited with the Clerk of this Court a check for the total Death Benefit Proceeds payable under the Group Policy, which amounts to Eighty-Eight Thousand Dollars ($88,000), plus all applicable interest on that amount to date.

31. This Complaint in Interpleader is brought in good faith and without collusion with any of the Defendants.

32. This action is necessary for Standard to avoid a multiplicity of actions, unnecessary costs, attorneys' fees, and expenses of suit, and to prevent irreparable damage to Standard.

///

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

138268.1

6

Case No.
COMPLAINT IN INTERPLEADER

33. As a result of the conflicting claims or potential claims for the Death Benefit Proceeds payable under the Group Policy, Standard has incurred attorneys' fees and costs and continues to incur attorneys' fees and costs to investigate and establish the facts pertinent to the conflicting claims or potential claims for benefits payable under the Group Policy. To that end, Standard has retained the law firm of Meserve, Mumper & Hughes LLP to provide legal services and to protect Standard's interests. Standard has agreed to pay Meserve, Mumper & Hughes LLP reasonable attorneys' fees for its services. Standard requests that its costs and reasonable attorneys' fees incurred in the filing and prosecution of this action be reimbursed from the sums deposited by Standard with the Clerk of this Court in this action.

34. Standard is entitled to an injunction against all Defendants, enjoining them, during the pendency of this action and permanently, from instituting or prosecuting any proceeding in any State or Federal court against Standard, in any way connected to the Group Policy and/or the Death Benefit Proceeds payable under the Group Policy and at issue here, or affecting the rights and obligations as among the parties to this action.

## PRAYER FOR RELIEF

WHEREFORE, Standard respectfully requests that this Court grant the following relief:

1. That the Summons issued out of this Court be addressed and served on each of the Defendants, requiring each of the Defendants to appear, answer, plead and litigate their respective rights and claims in and to the Death Benefit Proceeds at issue under the Group Policy;

2. That each Defendant, their agents, attorneys, and representatives and all persons claiming by, through, or under them, be enjoined and restrained from instituting or prosecuting any suit or proceeding or any action or actions in any State court or Federal court against Standard or any of its agents on account of the Group

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

138268.1

7

Case No.
COMPLAINT IN INTERPLEADER

Policy or the Death Benefit Proceeds payable under the Group Policy during the pendency of this action and permanently;

3. That Standard be released from any and all further liability to each Defendant and any persons claiming by, through, or under them, arising out of the Group Policy or the Death Benefit Proceeds payable under the Group Policy, and that Standard be dismissed from all further proceedings in this action with prejudice;

4. That this Court allow Standard a reasonable sum for its attorneys' fees and costs incurred in the preparation and prosecution of this action and that this sum be paid out of the Death Benefit Proceeds of the Group Policy or as the Court deems proper;

5. That this Court decree this Complaint in Interpleader to be properly filed and brought in good faith; and

6. For such other and further relief as the Court deems just and proper.

Dated: August 21, 2014

MESERVE, MUMPER & HUGHES LLP
James J. Moak
Charles K. Chineduh

By: _____
Charles K. Chineduh
Attorneys for Plaintiff
STANDARD INSURANCE COMPANY

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

8

Case No.
COMPLAINT IN INTERPLEADER

138268.1